And, incredibly enough, we're going to come to the end. Let's see how simple it is. Number 142764, the United States v. Christopher Boultinghouse. Mr. Hillis. Good morning. Good morning. May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Defendant Appellant Christopher Boultinghouse. He asserts two issues on appeal, that the district court erred by finding that he waived his right to counsel, and secondly, that the district court erred by not considering the 3553A factors when imposing sentence. As for the first issue, although a defendant's procedural protections are limited, they're diminished by virtue of the supervised release context and revocation proceedings, the right to counsel is nevertheless one of the fundamental rights that are protected, and therefore the colloquy that is necessary under FRERTA is as important to be had and as full of fashion in a revocation proceeding as it is in a trial court proceeding. But here you've got a fellow who, he understood what was at stake. He understood the risks of proceeding pro se. He himself said, you know, I have a fool for a client or whatever. He was a Category 6. He'd been in the system for a long time. I disagree that he understands, and just because you've been part of the system for a long time doesn't mean that you have the mental ability or the consciousness to appreciate what's happening at the revocation proceedings. My client had 10th grade education. He also had a significant drug history, and I understand that has cognitive impacts on an individual's abilities, and I think that would be apparent here. We need only look anecdotally at some of what happened here. Yes, he says, I'm all aware of having a fool for your client, and then he proceeds to try to prove during the proceedings that the ---- What a fool he is. The probation officer perjured himself as opposed to trying to attack the elements of the offense and so forth. So to say that you understand is different than having the district court make sure that you understand. That is what is required under FRERTA. We don't simply say you're able to represent yourself, yes or no. The guy says yes, and off we go. That's not it. FRERTA requires ---- The judge came back and sort of filled in the colloquy a bit later on. We do have a series of questions about whether he understands the charges that brought him into court on a revocation, and then the disadvantages of self-representation, obviously the scope of the penalties. All those bases were touched at some point during the proceeding. Touched barely. That would be the distinction that I draw first, is that it's the necessity of saying in a meaningful fashion what the risks are. So I think it would be apparent to anybody, you're in court, you're in shackles, or I don't know how he was brought in there originally, but in any event, he's in custody. He's at risk. Yes, he's going to go to prison, but it's the importance of saying, how is it that you can benefit by having counsel? What is your prior experience? Did you ever represent yourself? What did you do? These are the inquiries that are important to FRERTA. That did not happen here, unquestionably did not happen. Well, right, but we consider the context, too. I mean, this is not, obviously he's facing prison time on revocation, but this is not necessarily qualitatively the same sort of inquiry that occurs if someone wants to represent themselves from the get-go of a criminal prosecution. We're on revocation here. And you all wind up in the same prison, the defendants. Right, I understand that, but the context is different. His capacity to waive in this context is different because a revocation proceeding is very summary. It calls on different skills as a qualitative matter. I don't think we can necessarily draw direct comparisons. I've never seen any distinction between the context that say the FRERTA colloquy can be FRERTA-lite for revocation as opposed to a fuller. I'm not suggesting FRERTA-lite. I'm suggesting that it's qualitatively a different inquiry because the judge's evaluation of the defendant's ability to make a knowing and voluntary waiver must consider the context, including the fact that a revocation proceeding is very simple. Not that simple. Rules of evidence don't apply, right? But the district court told them they did, so that's an oddity in this. Well, the district court said you're going to be held to the same standards as a lawyer, right? It also said the rules of evidence apply, and so your lawyer could help you in that. Let me just suggest that that shows the muddling here. This is why supervised release is in some ways more complicated, not less. Supervised release involves a situation where an individual is there on risk of imprisonment. There is a corollary proceeding, or at least charges, over in state court. So that's certainly a complicating factor that is distinct from a lot of federal proceedings. So what you say, how you say, how it's going to affect you here versus what you do later and how it affects you there, those are all complexities, and they're not explained to him here. I think it makes the proceeding more complex. Well, the judge did step in and explain that midstream. Again, it didn't happen at the beginning, but in the middle of the hearing, the judge jumped in and said, hold on, you're facing charges in the state system. Are you aware of the consequences of incriminating yourself here? He said, oh, I'm not going to do that, Judge. He did try to step in. I mean, he sort of got the principle. At multiple parts during the proceeding, the judge would interject and try to save him from himself. Very clear. Except that that's not what the FREDA colloquy would require. It's not spontaneous and spotty. It is supposed to be something at the beginning, and I think it's designed to impress upon an individual the genuine risks that you are facing and to explain those to the individual. And this is a person who very clearly did not understand what was required of him and therefore how to accomplish his defense. He did a very poor job. The record shows that in hindsight. But in any event, there's nothing. Second issue. Yes. Does the narrowness of the sentencing range matter, vis-à-vis the court's failure to articulate a rationale for the sentence? No. There's no authority that says if the punishment is less or the band of time is smaller, that you don't have to consider the factors. Any day imprisonment, and this has been said in numerous cases better than I'm going to say it now, is an important thing, and it should not be taken lightly. And in Robertson, this court instructs that district courts are supposed to consider both 3553A factors and the policy statements. The record clearly shows that the policy statements were considered, but it also clearly shows that no 3553A considerations were leveled or assessed as part of the imposition of sentence. And so far as this is pertinent, the district court advised my client that he was subject to 21 months' imprisonment and said so one or two times. And then ultimately my client gets 24 months' imprisonment. And that's a bit of a concern. It just shows some of the inconsistencies throughout the proceedings here and perhaps influences some of the assessments of risk by my client. Thank you to the court for its time. I ask that it vacate and remand. Thank you. Mr. Schellenberger, hello. Good morning, Your Honor. Yeah. My name is Todd Schellenberger. I'm an assistant United States attorney for the Southern District of Indiana, and I represent the United States in this appeal. The district court did everything it could possibly do to urge Mr. Boltinghouse to accept representation by counsel in this case. The district court certainly did not abuse its discretion in finding that Mr. Boltinghouse knowingly and intentionally waived his right to counsel in a supervised release violation hearing. The court called an experienced defense attorney to the courtroom for the purpose of having that attorney available to represent Mr. Boltinghouse. The court urged Mr. Boltinghouse to accept this representation. The court warned Mr. Boltinghouse of certain risks associated with self-representation. And the court offered its opinion directly to Mr. Boltinghouse that he should not go forward without an attorney. Despite these warnings and under these circumstances, Mr. Boltinghouse chose to represent himself, which is his right. The district court then proceeded to hear evidence about alleged violations of Mr. Boltinghouse's supervised release conditions. Well, let me stop you right there. The recounting of the record that you've just given suggests that all of that stuff happened at the top of the hearing when the defendant said he wanted to represent himself, and that's not quite right. All of that stuff came in in dribs and drabs throughout the course of the hearing. That is true. It occurred at two main points, at the beginning when the defendant first said that he intended to represent himself. And the colloquy there was extremely brief. It was brief. Do you know that's a really bad idea? Yes? Okay. Go ahead and do it. And you'll be held to a standard of an attorney. And then the government proceeded with its presentation. And at the first point in the hearing when the responsibility shifted to the defendant to go forward with something, that is the cross-examination of the only government witness, the probation officer, the court then did further questioning and discussion with the defendant about the risks associated with self-representation before he took a final step of taking control over the case by that cross-examination. That's not really the first time that the defendant had to do something in the case. Listening to the direct examination and understanding what points to pull out and thinking about that, that's part of representing yourself as well. And so I'm wondering if it doesn't matter that the actual finding that the waiver was knowing involuntary didn't happen before any further steps in the proceedings went forward. Because I think there are some things that a lawyer would be listening for and perhaps objecting to if there was something objectionable that would happen during the direct examination as well. The court, I think, is correct to point that out. But this Court and the Supreme Court have stated that it does not have to be a precise formula or script, that the analysis of whether an abusive discretion occurred must be based on the record as a whole and based on a range of case-specific issues. Right. It's very case-specific. But you would not defend this colloquy that occurred at the beginning of the hearing if we were in the trial context. If the defendant was coming into the system for the first time and made this election to represent himself, you would not defend this as a valid waiver of counsel. I can't believe that you would. We have to filter this through the context of this being a revocation hearing. The government argues, and it's its position, that the context of a supervised release violation hearing is very important to the analysis of whether there was an annoying and intelligent waiver. Right. I mean, this is just not the normal waiver of counsel colloquy that we would expect to see. In a trial, that's correct, Your Honor. And, of course, in a trial you wouldn't have final disposition of a matter taking place at the first appearance of an individual in court. Sure. And in many cases, supervised release violations are handled in that way, that the entire matter is disposed of at the first hearing. And, of course, in a trial you'd have anticipation, in most cases, of an election to proceed without counsel before the complete colloquy was gone over with the defendant. Now, am I correct that once Judge Young made his findings as to the violations, he immediately announced his sentence without ever asking the parties to address the court as to an appropriate sentence, let alone giving a single reason for the sentence that he imposed? Again, keeping in mind it's a supervised release violation hearing, the court did ask for both parties to, in a sense, sum up their arguments regarding the violation in the case itself. Well, that's the parties. What about the judge? Do you think he summed up anything here? The judge did move immediately to sentencing. He did articulate his measurement of the guidelines with respect to the recommended guideline range, the class of the violation, and the criminal history, and imposed a sentence within that guideline range. The sentencing decision is a single sentence. Defendant is sentenced to 24 months at the Bureau of Prisons. That's correct. We've got nothing else. Your Honor, and Mr. Boltinghouse correctly points out the Roberson opinion. I would like to make one point with respect to that opinion with respect to the sentence in this case. In Roberson, this court makes very clear that it expects reasons from the district court when it imposes a sentence, especially when the court is, in a sense, ignoring the guidelines by going substantially outside of the guidelines. And that did not take place in this case. We do have a within-the-guidelines sentence. And, of course, this court wants to have an opportunity after determining that no procedural error has occurred in sentencing to weigh whether or not, in fact, the sentence is reasonable. And it needs those reasons set forth in the record to do that. But Mr. Boltinghouse doesn't even argue in his case that there's a real possibility that this court could find the same sentence unreasonable. Well, but that's not the point, is it? Well, Your Honor, I think the court is concerned in its need for reasons to do a later reasonableness review. And Mr. Boltinghouse. Do you all down there ever say to the judge, Judge, would you be kind enough to give us your reasons? Of course, under certain circumstances, that's in the front of our mind at a particular moment, particularly in cases that have extensive sentencing hearings. But, again, the context of this case is a supervised release violation that often occur, as I said, at the first appearance and proceed from there. If the court has no further questions, I'll step down. Thank you so much. Thank you, Your Honor. You've got some time. Do you want to use it? Oh, you look so unhappy about that. I'll be quick. We had a fast hearing. I mean, but the price is the same. I'm glad to have a few more moments up here, and that's all I'll need. We had a fast hearing. We asked this court remand for a fair hearing. We've had a lot of irregularities and things that keep afflicting supervised release cases. This is another opportunity, perhaps, to examine how we do things and perhaps to avoid, if there's a mistake here, this mistake being made again. And so for the reasons we've explained, we think that the proceedings here were improper. We think the sentence was improper. They're procedural errors. We think they could affect the outcome of the case, but, of course, it's not necessary under Robertson that we show that. We think that we've demonstrated the errors sufficient that this court should vacate and remand. Thank you. Oh, thank you both so much. You always do such a great job in this courtroom. The case will be taken under advisement, and we're leaving. Court will resume tomorrow morning.